ACCEPTED
01-14-01014-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/4/2015 3:15:26 PM
CHRISTOPHER PRINE
CLERK

**No.** 01-14-01014-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/4/2015 3:15:26 PM
CHRISTOPHER A. PRINE
Clerk

## In The Court Of Appeals
## For the First District of Texas
## At Houston

### Leticia Loya,
*Appellant,*

### v.

### Ian Taylor, Jacobus Sterken, Stichting Tinsel Group, Vitol Holding II S.A., and Tinsel Group, S.A.,
*Appellees.*

Appeal from the 190th Judicial District Court, Harris County, Texas
Trial Court Cause No. 2012-33464

### Appellant's Reply Brief

PROVOST★UMPHREY LAW FIRM, L.L.P.
Jennifer Job
Texas State Bar No. 2604582
James E. Payne
Texas State Bar No. 00788171
P.O. Box 4905
Beaumont, Texas 77701
(409) 835-6000
Facsimile (409) 813-8605
jjob@pulf.com
ATTORNEYS FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i
TABLE OF AUTHORITIES.....................................................................ii
SUMMARY OF THE ARGUMENT..........................................................1
ARGUMENT AND AUTHORITIES ...........................................................1
Standard of Review. ...............................................................................2
The Trial Court Erred in Granting the Appellees' Special Appearances........2
    A. Appellees' Case Law is Inapposite. ........................................9
    B. Appellant Pled Sufficient Jurisdiction Facts Against
       Each Appellee. ......................................................13
    C. The Forum Selection Clause in Contracts Plaintiff Did Not Sign
       Cannot Insulate Appellees from Jurisdiction. ......................16
    D. The Fiduciary Shield Doctrine Does Not Apply Here and Has Never
       Been Adopted by the Texas Supreme Court. ......................18
    E. Texas Has an Interest in Adjudicating this Dispute with a Texas
       Plaintiff, a Texas Divorce, and Texas Co-Defendants – and Appellees
       Have Profited Greatly from Texas and Houston in Particular. .........20
The Trial Court Erred in Denying Appellant's Motion for Continuance to
Conduct Discovery. ...............................................................................22
CONCLUSION AND PRAYER.................................................................23
CERTIFICATE OF SERVICE..................................................................23
CERTIFICATE OF COMPLIANCE .........................................................25

# TABLE OF AUTHORITIES

**Cases**                                                               **Page**

*Air Tropiques, Sprl. v. Northern & Western Ins. Co., Ltd.*
2014 WL 1323046 (S.D. Tex. 2014). ............................................. 9, 10

*Barriere v. Juluca,*
No. 12-23510-CIV, 2014 WL 652831 (S.D. Fla. Feb. 19, 2014). ...... 8

*Boyer v. Diversified Consultants, Inc.,*
2014 WL 6607005 (E.D. Mich. Nov. 19, 2014). .................................. 8

*Brown v. Gen. Brick Sales Co., Inc.,*
39 S.W.3d 291 (Tex. App.—Fort Worth 2001, no pet. h.). .............. 18

*Camac v. Dontos,*
390 S.W.3d 389 (Tex. App.—Dallas 2012, no pet. h.). .................... 19

*Carbonit Houston, Inc. v. Exch. Bank,*
628 S.W.2d 826 (Tex. App.—Houston [14th Dist.] 1982,
*writ ref'd n.r.e.* 1982). ..................................................................... 14

*Carone v. Retamco Operating, Inc.,*
138 S.W.3d 1 (Tex. App.—San Antonio 2004, pet. denied). ........... 19

*Daimler AG v. Bauman,*
571 U.S. ___, 134 S. Ct. 746, 187 L. Ed.2d 624 (2014). .......... *Passim*

*Denso Corp. v. Hall,*
396 S.W.3d 681 (Tex. App.—Houston [14th Dist.] 2013). ........... 9, 10

*D.H. Blair Inv. Banking Corp. v. Reardon,*
97 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2002,
pet. dism'd w.o.j.). ............................................................................ 19

*Garner v. Furmanite Australia Pty., Ltd.,*
966 S.W.2d 798 (Tex. App.—Houston [1st Dist.] 1998,
pet. denied). ...................................................................................... 18

*George v. Uponor Corp.*,
   988 F. Supp. 2d 1056 (D. Minn. 2013), *reconsideration denied* (Apr. 14, 2014). ...............................................................................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2014 WL 1091044 (N.D. Cal. Mar. 13, 2014). ......................................8

*In re Ian Taylor*,
   401 S.W.3d 69 (Tex. App.—Houston [14th Dist.]
   2009, no pet. h.). ...................................................................................5

*MasterGuard L.P. v. Eco Technologies Intern., LLC*,
   441 S.W.3d 367 (Tex. App.—Dallas 2013, no pet. h.). ....................16

*Michiana Easy Livin' Country, Inc. v. Holten*,
   168 S.W.3d 777 (Tex. 2005). ...............................10, 11, 12, 16, 17, 22

*Moki Mac River Expeditions v. Drugg*,
   221 S.W.3d 569 (Tex. 2007). ...........................................................2, 22

*Morris v. Kohls-York*,
   164 S.W.3d 686 (Tex. App.—Austin 2005, pet. dism'd). ................18

*National Indus. Sand Ass'n v. Gibson*,
   897 S.W.2d 769 (Tex. 1995). ...............................................................2

*Nichols v. Tseng Hsiang Lin*,
   282 S.W.3d 743 (Tex. App.—Dallas 2009, no pet.). .........................18

*Perna v. Hogan*,
   162 S.W.3d 648 (Tex. App.—Houston [14th Dist.]
   2005, no pet. h.). ...................................................................................18

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*,
   235 S.W.3d 163 (Tex. 2007). .........................................................11, 12

*Read v. Cary*,
   615 S.W.2d 296 (Tex. Civ. App.—Dallas 1981,
   *writ ref'd nr.e.*). ............................................................................14, 15

*SITQ E.U., Inc. v. Reata Restaurants, Inc.,*
    111 S.W.3d 638 (Tex. App.—Fort Worth 2003, pet. denied). .........18

*Solargenix Energy, LLC v. Acciona, S.A.,*
    2014 IL App (1st) 12340. ....................................................................8

*Spir Star AG v. Kimich,*
    310 S.W.3d 868 (Tex. 2010). ...........................................................5

*Tabacinic v. Frazier,*
    372 S.W.3d 658 (Tex. App.—Dallas 2012, no pet.). ...................18, 19

*TexVa, Inc. v. Boone,*
    300 S.W.3d 879 (Tex. App.—Dallas 2009, pet. denied). .................19

*Temperature Sys, Inc. v. Bill Pepper, Inc.,*
    854 S.W.2d 669 (Tex. App.—Dallas 1993,
    *writ dism'd by agreement*). ...............................................................14

*TV Azteca v. Ruiz,*
    13-12-00536-CV, 2014 WL 346031 (Tex. App.—Corpus
    Christi 2014, pet. granted Jan. 30, 2015). ........................................11

*Wright v. Sage Eng'g,*
    137 S.W.3d 238 (Tex. App—Houston [1st Dist.] 2014,
    pet denied). ....................................................................................18, 19

## SUMMARY OF THE ARGUMENT

Jurisdiction exists in Texas over each Appellee. The trial court wrongly granted Appellees' special appearances under Rule 120A of the Texas Rules of Civil Procedure. Appellees do not really dispute that *Daimler AG v. Bauman* has been widely limited by courts across the nation; *Daimler* does not reach nearly as far as Appellees mislead the trial court to believe. 571 U.S. ___, 134 S. Ct. 746, 187 L. Ed.2d 624 (2014). Defendants' response either ignores the evidence or misstates the evidence in an effort to cloud the clear connection to Texas of each of the Appellees. Under either the general or specific jurisdiction test, Texas has jurisdiction over each Appellee.

In the alternative, the trial court erred in failing to grant Appellant's motion for continuance to receive written discovery responses back from Appellees on the subject of jurisdiction. As a result, this Court should reverse the trial court's ruling and remand for further proceedings.

## ARGUMENT AND AUTHORITIES

Business entities and persons who take advantage of Texas economies, employees and courts should be subject to Texas court's jurisdictions. Defendants cannot enter into and rely on contracts with Texans and then disavow personal jurisdiction in Texas. Therefore, Appellant asks this Court to reverse the decision

- 1 -

of the trial court and remand for further proceedings. In support thereof, Appellant shows the following.

## STANDARD OF REVIEW

In the special appearances, Appellees each bore the burden of negating all bases of personal jurisdiction. *See National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex. 1995). A review of the record and the law establishes that none of the Appellees met this burden.

## I. THE TRIAL COURT ERRED IN GRANTING THE APPELLEES' SPECIAL APPEARANCES

The Court need only find general or special jurisdiction on the Appellees in order to reverse the trial court's decision. As detailed in Appellant's original brief, the Appellees have more than sufficient contacts with Texas to impose jurisdiction under general jurisdiction, and Appellees overstate the reach of *Daimler*. Further, Appellees' contacts have a substantial enough connection with the lawsuit to impose specific jurisdiction under the pleadings, and Appellees overstate the requirements of specific jurisdiction. The Texas Supreme Court has already rejected the position Appellees urge this Court to impose, which would have required the contact to be "substantially relevant to proof of the claim" to impose specific jurisdiction. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 581-82 (Tex. 2007).

Instead, the trial court had before it a record that both legally and factually demanded jurisdiction over Appellees. Legally, Appellees relied in their pre-trial briefing on contracts that Appellees entered with Texas residents; more importantly, they relied on contracts that centered on the very stock made the basis of Plaintiff's lawsuit. CR 997-1159, App., tabs B-F.

And factually, this case clearly survived the jurisdictional analysis. Appellee Ian Taylor is the president of the Vitol Group and the largest single shareholder. *Id.* at 3. While Appellees' briefing suggests that the Texas corporate co-defendant Vitol, Inc. was wholly separate from the larger "Vitol Group" and that Appellant was conflating the entities, Taylor himself conflates them and acknowledges that the Vitol Group does its business through Texas corporation Vitol, Inc.:

> A: Houston is our main office, and therefore, Vitol, Inc. is our main entity in the United States by which we – we trade. In other words, we buy physical oil and physical gas, physical power. We're buying and selling that – those commodities in the name of Vitol, Inc. So that's why I said it's our main office in the United States. **And therefore, we do all our business through it.**
>
> …
>
> Our people, our staff, indeed, primarily are in Houston, Texas.
>
> …
>
> I think it's fair to say we have a, yes, significant trading presence in Houston.

CR 1008, 1010-11.

- 3 -

Specifically as to Taylor himself, he testified that of the offices across the world, Houston is one office of probably only five or six that are important enough to the Vitol Group for him to visit annually. CR 1045-46. He monitors the Houston office's activities and performance daily. CR 1047. Taylor testified that almost 10% of Vitol entities employees worldwide work in the Houston office. CR 1011. He testified regarding the multiple contracts he entered with co-Defendant Miguel Loya, a Houston resident regarding his Vitol stock, including the stock whose value is in question in this underlying suit. CR 681-700. He specifically admitted soliciting share purchase transactions with Mr. Loya and the 50-60 other Texan shareholders at least yearly. CR 1019-1028. Taylor also signed a Statutory Durable Power of Attorney citing Texas law, appointing Houston resident and codefendant Mr. Loya to act as his attorney-in-fact as manager of Knightsbridge, signing the Power of Attorney in Texas in front of a Houston notary. CR 1033; 781-84. He has served as a manager and sole member of a limited liability company organized here in Texas, under which he entered a contract to purchase a Houston, Texas condo. CR 1029. Taylor stated he knew that his Texas limited liability company sought seeking relief from a Texas court in relation to this contract with Harris County, Texas defendants. CR 1036-37. Appellees protest the interpretation of the litigation surrounding Mr. Taylor's deposition in the subject divorce, but the text of the opinion speaks for itself. The Court analyzed

Taylor's unique knowledge and the need for his testimony on the stock that is made the subject of this lawsuit and owned by Texas residents after Taylor solicited Mr. Loya's stock purchase. See *In re Ian Taylor*, 401 S.W.3d 69, 71 (Tex. App.—Houston [14th Dist.] 2009, no pet. h.); CR 838-45, App., tab AA. The trial court overruled his special appearance. *Id.* Similarly, there is ample evidence to support jurisdiction against Taylor, and the trial court erred.

As for Tinsel Group, S.A. ("Tinsel"), half of its corporate directors are Texas residents. CR 1176, 1178, 1180. As would be expected, Tinsel acknowledged that all the attendant mailings, e-mails and phone calls from and to those directors are centered in Texas. CR 1180, 1188, 1224, 1226. Tinsel also entered into a number of contracts with Houston residents and co-defendants to this lawsuit. CR 1204, 1206, 1210, 1240. Tinsel has sought remedies from Judge Miller and taken advantage of Houston courts. CR 1218. Tinsel complains in its brief that the remedies it sought were under federal law. However, Tinsel must acknowledge that it submitted itself to a Texas court in that matter, and that this is not a case where Tinsel has any "...unique and onerous burden placed on a party called to defend a suit in a foreign legal system." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879-80 (Tex. 2010). Here, as in *Spir Star*, Tinsel's burden litigating in Texas is obviously "minimal and is outweighed by [Plaintiff Loya's] and Texas's interests in adjudicating the dispute here." *Id.* If Tinsel can come to

Houston federal court to seek remedies, it can travel a few blocks away to the state courthouse to defend. The trial court had jurisdiction over Tinsel.

Jacobus G. Sterken is a tax lawyer for Vitol entities, and a director in roughly thirty (30) Vitol entities, including two Vitol entities headquartered and registered in Texas. CR 1090-91. Specifically, Sterken has also served as a director in Vitol, Inc., a co-defendant in this case headquartered in Houston which has not protested jurisdiction, from approximately 2008 through 2010. CR 1095-96. Sterken travels annually since 1999 to Houston, Texas, and communicates via e-mail and phone about Vitol, Inc.'s tax matters. CR 1096-98, 1119-20. He has executed multiple contracts with Texas residents related to Vitol entity stock. CR 264-273; CR 276-79. Sterken acknowledged that his communications – involving topics such as the intrinsic value of Loya and other shareholder's shareholding – would reach shareholders in Houston and other parts of Texas. CR 1108-09; 280-282; 283-87, 288-89, 290-91, 292-93, 274-75, 1108-9, 1118-19. The trial court clearly had jurisdiction over Sterken.

As to Appellee Stichting Tinsel, Ian Taylor testified in his deposition that Mr. Loya's ownership in Vitol (the shares made the basis of this lawsuit) was "derivative" through "a Luxemburg company that is a holding company through Stichting Tinsel, and that "by his ownership of Tinsel represents a correlative ownership of Vitol." CR 554-55. Stichting Tinsel was "effectively a vehicle [ ] for

- 6 -

US shareholders" like Texans Miguel and Leticia Loya. CR 555. A director of Stichting Tinsel testified that he himself has been to Houston "maybe more than a dozen times" since 2011 – not under subpoena or otherwise by force – to discuss issues in litigation between Vitol entities and the Loya divorce and Loya family trust. CR 1073-74. This director acknowledged that Stichting Tinsel entered into several contracts with the knowledge that the relevant shareholder and Vitol entity employee was a Texas resident. CR 1066, 1070-71. Stichting Tinsel was a signatory to the shareholder agreements that the Vitol Defendants rely upon in their Motion to Dismiss. CR 594-630. Stichting Tinsel has executed multiple additional contracts with Houston resident Miguel Loya which the Vitol Defendants specifically relate to the stock valued in the Loya divorce and made the subject of the pending lawsuit. CR 643-49. Stichting Tinsel has entered into similar agreements for approximately seventy (70) Texas residents who are employees of a Vitol entity. CR 1075-76. The trial court clearly had jurisdiction over Stichting Tinsel.

VHIISA has similarly entered into multiple contracts with co-defendant and Houston resident Mr. Loya that relate to the stocks at issue. CR 322-34, 337-41, 342-46, 347-50, 351-53, 1137-43. Additionally, VHIISA sent similar shareholder communications and entered into similar contracts with approximately 50-60 Houston shareholders. CR 1144-47. Finally, Houston resident Miguel Loya

-7-

served as a director of VHIISA from 2007 through 2013. CR 1134-1135. The trial court clearly had jurisdiction over VHIISA.

The facts overwhelmingly demonstrate that these are Defendants seeking to have their cake and eat it too – make money from the Houston economy, use Houston employees and shareholders, form Texas structures under Texas law, solicit and execute contracts with Texans, and seek remedies in Texas courts, but to avoid those same courts when sued for their behavior. Appellees rely heavily on *Daimler*, but unlike post-*Daimler* cases rejecting jurisdiction, this case has:

- The presence of a forum-based defendant. The U.S.-based related corporation – Vitol, Inc. - is a defendant in this action, unlike *Daimler*, as are Texan individual co-defendants.. CR 18-19.*George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1079 (D. Minn. 2013), *reconsideration denied* (Apr. 14, 2014); see also *Solargenix Energy, LLC v. Acciona, S.A.*, 2014 IL App (1st) 12340.

- The end target and end result of the activity was in the forum state, as Plaintiff clearly pled in this case. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 1091044, at *7 (N.D. Cal. Mar. 13, 2014); *Boyer v. Diversified Consultants, Inc.*, 2014 WL 6607005 at *5 (E.D. Mich. Nov. 19, 2014) ("However, this case concerns limited personal jurisdiction for alleged conduct causing consequences in the forum state, which is a different issue entirely").

- No "absence of a Texas connection to the injury, perpetrator, or victim" in this case. *Barriere v. Juluca*, No. 12-23510-CIV, 2014 WL 652831, at *9 (S.D. Fla. Feb. 19, 2014). This case centers around a Texas divorce, a Texas stock sale transaction, Texas residents, Texas codefendants, and a company whose primary U.S. situs is in Houston. CR 1008, 16-38.

While Appellees would have this Court believe that *Daimler* virtually eradicates jurisdiction against foreign-based defendants, that is not the case. This case falls squarely within the type of cases that survive the *Daimler* analysis.

## A. Appellees' Case Law is Inapposite

Further, the cases Appellees cite are inapposite. For example, Appellees cite *Denso Corporation v. Hall* for the proposition that execution of multiple contracts does not automatically imply general jurisdiction. *Appellees' Brief* at 15, citing *Denso Corp. v. Hall*, 396 S.W.3d 681 (Tex. App.—Houston [14th Dist.] 2013). First, that was never Appellant's position; it is the number and nature of these contracts that should carry the day for Appellant. Second, the kinds of contracts at issue in *Denso* were minimal in both number and in scope. *Id.* at 695. In *Denso*, the foreign defendant entered into only two (2) contracts with Texas companies. *Id.* at 693. Both of those contracts were essentially licensing agreements that did not require the provision of any service at all. *Id.* at 695. Unsurprisingly, the court did not find that these two (2) contracts requiring (absolutely no performance by the parties to the contract) demonstrated general jurisdiction. *Id.*

Similarly, Appellees point to Judge Rosenthal's recent decision in *Air Tropiques, Sprl. v. Northern & Western Ins. Co., Ltd.* 2014 WL 1323046 (S.D. Tex. 2014). But *Air Tropiques* involved a defendant who "participated in underwriting the insurance policy that covered property located in Africa, for an

- 9 -

insured based in Africa, by an insurer in St. Kitts." *Id.* at *11. The defendant "did not provide any insurance coverage in Texas or seek business from Texas." *Id.* The contract at issue did not have any foreseeable Texas consequences, and the defendant did not contract with Texas residents. *Id.* at *12.

Cases like *Denso* and *Air Tropiques* present a wholly different fact pattern than the present case. Neither does the Texas Supreme Court's decision in *Michiana Easy Livin' Country, Inc.* v. *Holten* support Appellees' position. 168 S.W.3d 777 (Tex. 2005). *Michiana* involved the following fact pattern:

> James Holten decided to buy a $64,000 Coachmen recreational vehicle sight unseen. Eschewing every RV dealer in Texas, he sought a lower price from Michiana Easy Livin' Country, Inc., an outlet store that only did business in Indiana. Holten called Michiana in Indiana, sent payment to Indiana, paid for delivery from Indiana, and agreed to resolve every dispute in Indiana. But when a dispute actually arose, he filed suit in Texas.

*Id.* at 781.

The *Michiana* defendant was not related to the manufacturer or any national dealer. *Id.* at 784. It did not advertise in Texas or even on the Internet (almost unbelievable in this digital age), and did not solicit any business from the plaintiff. *Id.* Because the plaintiff wanted a cheaper price than any Texas RV dealer, he called the Coachmen factory, which referred him to the factory outlet defendant, who he then called and arranged for the sale himself. *Id.*

- 10 -

Even in the extreme fact pattern presented in *Michiana,* the Court still instructed that a single contract can suffice to impose jurisdiction:

> "It is true that in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state. A long-term franchise agreement may establish minimum contracts because, though it stems from a single contract, it involves any contacts over a long period of time. Similarly, a life insurance policy may stem from a single contract, but necessarily involves a series of contacts until death does the parties part."

*Id.* at 787 (emphasis in original).

Appellees also rely heavily on *PHC-Minden, L.P. v. Kimberly-Clark Corporation.* 235 S.W.3d 163 (Tex. 2007). First, *PHC-Minden* has no application to cases where specific jurisdiction is alleged. *Id.*, as recognized in on *TV Azteca v. Ruiz*, 13-12-00536-CV, 2014 WL 346031, at *26 (Tex. App.—Corpus Christi Jan. 30, 2014), *review granted* (Jan. 30, 2015). Second, the Texas Supreme Court noted in this case that the parties had "conducted extensive discovery relating to the jurisdictional issue," which did not occur in this case. *PHC-Minden*, 235 S.W.3d at 166. Third, the contacts in *PHC-Minden* were of an entirely different nature than the contacts presented here. Minden employees had only traveled to Texas twice; sent payments to Texas companies for unrelated purchases; and entered three contracts that were for limited and minimal services. *Id.* at 170-171.

- 11 -

This case is a far cry from the *PHC*-Minden case. Without rehashing the facts as stated in the original briefing, Appellees have entered into dozens of contracts with Houston residents and co-defendants that they contend control the direction of this litigation; they have sued in Houston, Texas district courts; they have directors living in Houston, Texas; they visit Houston at least annually; they benefit from Houston's unique properties; they incorporate businesses in Texas; buy Texas real estate; they correspond daily with the Houston offices and directors;[1] they serve as "vehicles" for Texas shareholders. CR 239-1159. Clearly, this case meets the requirements of general jurisdiction and is easily distinguishable from *Daimler*.[2] Further, this case meets the requirements of specific jurisdiction in that the sorts of contacts Appellees had with Texas were significant and involve the Texas stocks at issue in this case. Appellees are estopped from placing such high reliance on the forum selection clauses in the shareholder agreements in their forum selection analysis, while distancing themselves from those same contracts with Texas residents in the jurisdiction

---

[1] While Appellees argue that the membership of half of one entity's board being Texan residents is wholly irrelevant, the Texas Supreme Court has disagreed, noting in holding that personal jurisdiction existed over a Defendant where "[t]hree of [the protesting defendant]'s directors collectively own seventy-five percent of Limited, which will be litigating in Houston." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010). If even ownership of a Texas subsidiary by foreign directors is relevant, it is all the more persuasive when half of the defendant's board of directors are Texas residents.

[2] Appellees make frequent references to the merits of the case but that is not the focus of the jurisdictional analysis. As the Texas Supreme Court stated in *Michiana*, "[j]urisdiction cannot turn on whether a defendant denies wrongdoing – again as virtually all will." *Michiana East Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005).

analysis (which is an entirely separate issue). Texas has both general and special jurisdiction over Appellees, and the trial court erred in holding otherwise.

## B.    Appellant pled sufficient jurisdictional facts against each Appellee.

Appellees contend that Appellant failed to set forth and plead jurisdiction facts as to at least Taylor and Sterken and this alone should result in the trial court's order being upheld.    Appellees exaggerate the record and ignore the extensive jurisdictional pleading made by the Appellant. Appellant pled in its Second Amended Petition that Sterken and Taylor had actively participated in Texas businesses, solicited business from Texas residents, had sufficient minimum contacts to be subject to Texas jurisdiction, that they fraudulently misrepresented the acquisition of assets that would enhance the value of the Loya's Tinsel shares (which were subject to an agreement executed by Miguel Loya as a Texas resident); that they misrepresented the value of those shares through depositions and discovery in the Texas divorce lawsuit; that they failed to make Plaintiff as a (Texan) Vitol shareholder aware of material facts necessary for sound decisions; that they entered into a conspiracy with the Texas codefendants to commit this fraud; that they used the mail system to commit this fraud with Plaintiff as a Texan resident; and that they violated Section 27.01 et seq. of the Texas Business and Commerce Code by making false representations regarding this Texas stock

- 13 -

exchange between Plaintiff and Miguel Loya. Second Amended Petition at ¶¶7, 10, 22, 41, 42, 43, 44, 45. Appellant clearly pled sufficient facts to impose both specific and general jurisdiction. Further, courts perform a full review of the record when there is no objection to the evidence presented in the pleadings and special appearance hearing, and Appellant significantly briefed this topic and submitted a plethora of documents and evidence on the topic. *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673 (Tex. App.—Dallas 1993), *writ dism'd by agreement* (June 16, 1993). And Appellees' contention that they have met their burden to negate same by stating that Sterken and Taylor are non-residents of Texas is simply false. "[P]roof of nonresidency is not enough when a plaintiff alleges jurisdictional facts. *Id.* Then, a defendant must also negate the jurisdictional facts alleged. *Id.*; *Carbonit Houston, Inc. v. Exch. Bank*, 628 S.W.2d 826, 831 (Tex. App.—Houston [14th Dist.] 1982), *writ ref'd n.r.e.* (Tex. 1982) ("Such evidence [adduced at the special appearance hearing] does not include any proof that the defendants' alleged acts complained of by plaintiff did not occur in Texas."). "Regardless of [a tortfeasor's] location at the time he made the representations, [if] they were relied upon in Texas, and communicated to [plaintiffs] in Texas,…that is sufficient to come within the provisions of [the long arm statute]." *Read v. Cary*, 615 S.W.2d 296, 298-99 (Tex. Civ. App.—Dallas

- 14 -

1981), *writ ref'd n.r.e.* (Tex. 1981). Appellees have not met their burden, and their arguments fail. *Id.*

Appellees also argue that Plaintiff's pleadings were inadequate as to Appellees Stichting Tinsel, VHIISA, and Tinsel because "she merely alleged that, as to VHIISA, Tinsel, and Stichting Tinsel, these entities engaged in unspecified "activities purposefully directed to Texas that caused injury arising to and relating to those activities that form the basis of the lawsuit." *Appellees' Brief* at 23. If Appellees read merely the first few pages of the Petition, that might be true. Instead, Appellees plead for each of the corporate entities that they "purposefully availed themselves of conducting activities within the State of Texas by soliciting contracts with Texas residents, including but not limited to Miguel A. Loya...conducting meetings in Texas...placed phone calls, e-mails, mail, and faxes intended to solicit contracts and other business with Texas residents, including but not limited to Miguel A. Loya," that they fraudulently misrepresented the acquisition of assets that would enhance the value of the Loya's Tinsel shares (which were subject to an agreement executed by Miguel Loya as a Texas resident); that they misrepresented the value of those shares through depositions and discovery in the Texas divorce lawsuit; that they failed to make Plaintiff as a (Texan) Vitol shareholder aware of material facts necessary for sound decisions; that they entered into a conspiracy with the Texas codefendants to

- 15 -

commit this fraud; that they used the mail system to commit this fraud with Plaintiff as a Texan resident; and that they violated Section 27.01 et seq. of the Texas Business and Commerce Code by making false representations regarding this Texas stock exchange between Plaintiff and Miguel Loya. Second Amended Petition at ¶¶5, 6, 12, 22, 41, 42, 43, 44, 45. Appellant clearly pled sufficient facts to impose both specific and general jurisdiction against Stichting Tinsel, Tinsel, and VHIISA, and Appellees' citation of the first few pages of the petition does not reflect Appellant's pleadings. Appellant adequately plead jurisdiction, and the burden then fell to Appellees to negate all bases of jurisdiction. They did not.

## C. The Forum Selection Clause in Contracts Plaintiff Did Not Sign Cannot Insulate Appellees from Jurisdiction

Appellees repeatedly reference the forum selection clauses in the shareholder agreements. But the Texas Supreme Court has already held that:

> "[A] forum selection clause designating [another forum] does not necessarily indicate [a defendant] had no minimum contracts anywhere else. Generally, a forum-selection clause operates as consent to jurisdiction in one forum, not proof that the Constitution would allow no other."
>
> *Michiana East Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 792 (Tex. 2005) (emphasis added); *See also MasterGuard L.P. v. Eco Technologies Intern., LLC*, 441 S.W.3d 367 (Tex. App.—Dallas 2013, no pet. h.) (finding specific jurisdiction, reversing district court's decision granting special appearance, and stating "[a]lthough [defendant's] contracts with independent dealers were governed by Iowa law, it is the creation of

those contractual relationships by [defendant] in Texas...that is the subject of [plaintiff]'s claims, not disputes arising out of the contracts themselves.").

Further, the plaintiff in *Michiana* did not assert that enforcement of the forum selection clause from the contract (which he sought after and signed) was unreasonable or unjust, and the Court understandably held that "he should be held to it." *Id.* at 793. By contrast, in the present case, it is without dispute that Plaintiff Leticia Loya has never solicited any contracts with a foreign forum selection clause with Appellees and certainly never signed any. [3] Enforcement of the forum selection clause, or even construction of the forum selection clause to grant Appellees' special appearances, would be unreasonable and unjust. As the dissent to *Michiana* stated:

> Michiana's brief refers to the forum selection clause only as evidence of its own desire that litigation take place in Indiana. Sufficient contacts do not become insufficient simply because the defendant does not want to travel.

*Id.* at 798. (Medina, J., dissenting).

Similarly here, Appellees' own desire that this particular litigation take place in another forum does not render its contacts insufficient simply because Appellees do not want to travel. Appellees' forum selection clauses (in contracts to which

---

[3] This issue will be briefed in great detail in the sister-appeal to this case in this Court with Cause No. 01-15-00197-CV. Appellant's Brief in that case will be filed May 22, 2015.

Plaintiff was not a party) do not erase Appellees' numerous and significant contacts with Texas.

## D. The Fiduciary Shield Doctrine Does Not Apply Here and Has Never Been Adopted by the Texas Supreme Court

Appellees Ian Taylor and Jacobus Sterken also rely on the fiduciary shield doctrine. But that doctrine has never been adopted by the Texas Supreme Court. *Perna v. Hogan*, 162 S.W.3d 648 (Tex. App.—Houston [14th Dist.] 2005, no pet. h.); *Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 300 (Tex. App.—Fort Worth 2001, no pet. h.). Further, the application of the fiduciary shield doctrine has been limited to general jurisdiction cases and is not applicable to specific jurisdiction cases. *Id.; Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.); *Morris v. Kohls-York*, 164 S.W.3d 686, 691 (Tex. App.—Austin 2005, pet. dism'd); *Wright v. Sage Eng'g*, 137 S.W.3d 238, 247 to 248 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *SITQ E.U., Inc. v. Reata Restaurants, Inc.*, 111 S.W.3d 638, 651 (Tex. App.—Fort Worth 2003, pet. denied); *cf. Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 803 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Further, "under the fiduciary shield doctrine, there is no blanket protection from personal jurisdiction simply because the defendant's alleged acts were done in a corporate capacity; instead, each defendant's contacts with the forum State must be assessed individually." *Tabacinic v. Frazier*, 372 S.W.3d 658, 664 (Tex. App.—Dallas 2012, no pet.)

- 18 -

(individual nonresident defendants who formed corporate entities for purpose of acquiring and selling real estate in Texas were not protected under the fiduciary shield doctrine from the exercise of specific personal jurisdiction in action by Texas residents asserting negligent misrepresentation and fraudulent inducement in connection with their purchase of residential real estate; case involved allegations sounding in tort for which defendants might be held individually liable); *Morris v. Kohls-York*, 164 S.W.3d 686, 696 (Tex. App.—Austin 2005, pet. dism'd); *Wright v. Sage Eng'g*, 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 10 (Tex. App.—San Antonio 2004, pet. denied); *D.H. Blair Inv. Banking Corp. v. Reardon,* 97 S.W.3d 269, 277 to 278 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.). Thus, a corporate officer is not protected from the exercise of specific jurisdiction under Texas' fiduciary shield doctrine, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally liable. *Camac v. Dontos*, 390 S.W.3d 398, 411 (Tex. App.—Dallas 2012, no pet.); *TexVa, Inc. v. Boone*, 300 S.W.3d 879, 887 (Tex. App.—Dallas 2009, pet. denied). Unlike as characterized by the Appellees, Mr. Taylor owned and was the sole manager of a Texas Limited Liability Company. Taylor, with personal funds, purchased real estate in Texas. Plaintiff has alleged independent tortious activities by Taylor and Sterken that

- 19 -

could not have furthered the business of any Vitol Group and for which they would be individually liable, and thus the fiduciary shield doctrine cannot apply – even if it had been adopted by the Texas Supreme Court.

## F. Texas Has An Interest in Adjudicating this Dispute with a Texas Plaintiff, a Texas Divorce, and Texas Co-Defendants – and Appellees Have Profited Greatly from Texas and Houston in Particular

Further, the Texas Supreme Court in *Spir Star* emphasized Texas' interest in exercising jurisdiction over disputes involving Texas residents, particularly when Texas codefendants are already properly in the lawsuit:

> "Not only would [Plaintiff] face an undue burden were he forced to litigate his product liability claim against AG in Germany, but because the claims against Limited will be heard in Texas, it would be more efficient to adjudicate the entire case in the same place…We recognize the unique and onerous burden placed on a party called to defend a suit in a foreign legal system…In this case, that burden is minimal and is outweighed by Kimich's and Texas's interests in adjudicating the dispute here…Asserting personal jurisdiction over AG comports with traditional notions of fair play and substantial justice."
>
> *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879-80 (Tex. 2010).

The Court has been very clear that a foreign defendant cannot take advantage of our resources but excuse itself from our courts:

> Contrast those cases with the situation here. AG's board of directors created Limited because AG wanted to take advantage of the biggest economy in the world. Strobach

- 20 -

testified that 'the whole board...decided that [Houston would be the best place for a distributor] because we knew that – we thought that would be the greatest need, because of the immediate vicinity of all the refineries. Strobach traveled to Houston because 'we wanted to establish an office in Houston.'

*Spir Star AG v. Kimich,* 310 S.W.3d 868, 871, 877 (Tex. 2010) ("...AG decided that Houston would be the optimal location for a distributorship because the Texas coastal region's numerous refineries were well suited for AG's energy related products.").

First, while Appellees also complain that Vitol, Inc. – a codefendant – is the only company with its primary headquarters in Texas, this *Spir Star* opinion illustrates that use of an intermediary cannot insulate a defendant from the reach of a Texas court when the defendant is benefiting from the Texas market. *Spir Star AG v. Kimich,* 310 S.W.3d 868, 871 (Tex. 2010). Second, Appellee Stichting Tinsel in particular was "effectively a vehicle [ ] for US shareholders" like Miguel and Leticia Loya; it was *intended* to serve over 70 Texan residents, including co-Defendant and Texan Miguel Loya. CR 555; CR 591-93 at ¶2.1. Finally, in the present case, Taylor testified that he made the conscious decision to relocate Vitol, Inc. to Houston. CR 1049-1050. He then testified regarding the unique qualities of Houston, Texas that he wished to take advantage of in relocating:

Well, obviously, the United States is a major market for both the export and the import of petroleum products and crude oil. And Houston – it is, indeed, a fact, Houston is the center for the particularly – well, it's the major – it's

- 21 -

the major city in – in the area surrounded by major refineries and major other oil counterparties.

...

...I think it's – Houston is the – you know, it's the right place for – for Vitol as a physical energy company to be.

.

CR 1050.

Appellees would exploit Houston as a resource as the "right place to be" geographically, but assert that Houston courts are anywhere but the "right place to be." The Texas Supreme Court has already rejected this position in *Spir Star*, and so should this Court.

## II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR CONTINUANCE TO CONDUCT DISCOVERY

Appellees complain of the scope of the discovery Appellant propounded at the trial court level. But in determining whether the defendant purposefully directed action toward Texas, the court may look to conduct beyond the particular business transaction at issue: "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State." *Moki Mac*, 221 S.W.3d at 577; *see also Michiana, 168 S.W.3d at 786* (stating that Texas "cases appear to follow the 'additional conduct standard' "). Under this standard, and because *Daimler* did not eviscerate general jurisdiction in the manner Appellees argue, Appellant's discovery was entirely appropriate. While Appellant believes the special appearances should be reversed in their entirety, should the Court have

- 22 -

any doubts, Appellant respectfully asks this Court to reverse and remand for an opportunity to conduct discovery on the issue of jurisdiction.

## CONCLUSION AND PRAYER

For these reasons, Appellant Leticia Loya asks the Court to reverse the ruling of the trial court and to remand for further proceedings, and for any and all further relief to which Appellant are entitled, including but not limited to costs of appeal.

Respectfully submitted,

PROVOST★UMPHREY LAW FIRM, L.L.P.
Jennifer Job
Texas State Bar No. 2604582
James E. Payne
Texas State Bar No. 00788171
490 Park Street
P.O. Box 4905
Beaumont, Texas 77701
(409) 835-6000
Facsimile (409) 813-8605
jjob@pulf.com
jpayne@pulf.com

ATTORNEYS FOR APPELLANT LETICIA LOYA

## CERTIFICATE OF SERVICE

I hereby certify that one true and correct paper copy and one electronic copy of the above and foregoing instrument was mailed this 4th day of May, 2015, to counsel of record below via e-file:

Patrick W. Mizell
Deborah C. Milner
Jaclyn M. Lynch
Vinson & Elkins
1001 Fannin, Suite 2500
Houston, Texas 77002
713/758-2932
Fax: 713/615-5912
pmizell@velaw.com
cmilner@velaw.com
jaclynlynch@velaw.com
*Counsel for the Vitol Defendants*

Samuel A. Houston
Shepherd, Scott, Clawater & Houston
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
713/650-6600
Fax: 713/650-1720
shouston@sschlaw.com
*Counsel for Harry Tindall and Tindall & England PC*

Randall B. Wilhite
Fullenweider Wilhite, P.C.
4265 San Felipe, Suite 1400
Houston, Texas 77027
713/624-4100
Fax: 713/624-4141
rwilhite@fullenweider.com
*Counsel for Miguel Loya*

_____ */ s / Jennifer Job*_____
Jennifer Job

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(c) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 5,456 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

*/ s / Jennifer Job*

Jennifer Job