# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00371-CV

**Robert G. Morris, D.V.M. and Joyce M. Morris, Appellants**

**v.**

**Kallie Jo Kohls-York, Individually and d/b/a Kallie-Harie Reds and Brenda Behring, Individually and d/b/a South Central Texas Boer Goats, Appellees**

---

**FROM THE DISTRICT COURT OF SCHLEICHER COUNTY, 51ST JUDICIAL DISTRICT NO. 2562, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING**

---

## O P I N I O N

This is an appeal from a denial of the special appearances of appellants, Robert and Joyce Morris, contesting personal jurisdiction in Schleicher County. The principal issue on which jurisdiction depends is whether legally and factually sufficient evidence supports the district court's fact-findings and legal conclusions that the Morrises committed acts in their individual capacities giving rise to jurisdiction, as opposed to their capacities as employees of their limited liability corporation. We also consider the applicability of the "fiduciary shield" doctrine and its implications. We affirm the district court's order denying the Morrises' special appearances.

## BACKGROUND

Robert Morris, a veterinarian, and Joyce Morris, an embryologist, are residents of Missouri. Together, they perform embryonic collection and transfer veterinary services for

individuals and agribusinesses who raise goats and other small grazing animals. The Morrises' services entail removing embryos (fertilized eggs) from female animals and re-implanting them in other female animals. These services aid breeders in encouraging favorable genetic characteristics among their herds—embryos from female animals with favorable genetic characteristics can be transferred to other female animals with less favorable characteristics for gestation, thus freeing the genetically superior females for more breeding. Assuming the transplanted embryos successfully come to term and survive into adulthood, the genetically favorable traits will grow more prevalent in the herd over time.

In 1998, the Morrises provided their services, in their individual capacities, for twenty different individuals or entities while physically present at eleven Texas locations. On January 22, 1999, the Morrises established Morris Genetics, L.L.C., a Missouri limited liability corporation with its principal office in Missouri. Morris Genetics exists for the purpose of providing embryonic collection and transfer services and has only two employees—Robert and Joyce Morris. Robert Morris is licensed to practice veterinary medicine in Texas, but Morris Genetics is not licensed nor could it be because corporations may not practice veterinary medicine. *See* Tex. Occ. Code Ann. § 801.506 (West 2004).

Since establishing Morris Genetics, the Morrises have continued performing their embryonic transfer and implantation services while each is physically present at Texas locations. In 1999, they performed such services for thirty-two days, at nine locations, for seventeen customers; in 2000, twenty-three days, at ten locations, for sixteen customers; in 2001, thirty-five days, at nine locations, for fifteen customers; and, in 2002, twelve days, at five locations, for seven customers.

2

Neither the Morrises nor Morris Genetics have ever owned any property in Texas, nor have they maintained a bank account or employed Texas residents in any capacity. Neither Morris Genetics nor the Morrises solicit business in Texas, but they do send notices and medical supplies to their customers and accept payment via mail. Individual clients in Texas contact Morris Genetics to perform transfers.

Among the clients of the Morrises or Morris Genetics are appellees Brenda Behring and Kallie Jo Kohls-York. In 1998, Behring requested the Morrises' services for her business, South Central Texas Boer Goats. The Morrises visited Behring's farm in Gonzales County and initiated a transplant program with her goats that extended through 2001. Kohls-York hired the Morrises or Morris Genetics in 2001 to perform services at her Schleicher County goat ranch. The litigation in this case arose from visits by the Morrises to perform services at each of Behring and Kohls-York's ranches in April 2001, and again in late September and October of the same year. The success rate for these implantations fell far below the 70% the Morrises had estimated. The April implantations achieved only a 13% success rate for Behring and 39% for Kohls-York; in September, the results were 33% and 5%, respectively. The Morrises have admitted that a possible reason for the low success rate was bacterial contamination of the microscope they used when performing their services. Such contamination may have caused an inflammatory reaction in the goats in which the embryos were implanted, resulting in spontaneous abortions.

Kohls-York and Behring sued the Morrises individually and Morris Genetics for damages from negligence, breach of implied warranty, and DTPA violations. *See* Tex. Bus. & Com.

Code Ann. § 17.46 (West 2004).[1] The Morrises disputed that the district court could assert personal jurisdiction over them in their individual capacities. However, they did not dispute that jurisdiction was proper against Morris Genetics, their employer, based on their acts in Texas as employees. The Morrises filed special appearances, which the district court denied. The district court filed findings of fact and conclusions of law. This appeal followed.

## DISCUSSION

The Morrises present five issues on appeal. Their central contention is that, although they were physically present in Texas and committed various acts out of which tort claims arose, they cannot properly be haled into a Texas court in their individual capacities because they committed any such acts solely in their representative capacities as Morris Genetics employees. In light of this contention, the Morrises challenge, in their first issue, the legal and factual sufficiency of the district court's fact findings and its legal conclusions regarding jurisdiction. The Morrises next assert three issues concerning the fiduciary shield doctrine, contending that this doctrine bars the assertion of personal jurisdiction against them individually and that the evidence is legally and factually insufficient to establish the alter-ego exception to the doctrine. Finally, in their fifth issue, the Morrises argue that the exercise of personal jurisdiction is not consistent with traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

[1] Apparently the Morrises experienced similar problems—and similar litigation—with other Texas customers outside the region served by this Court. *See Morris v. Powell*, 150 S.W.3d 212 (Tex. App.—San Antonio 2004, no pet.).

4

*Personal jurisdiction*

In their first issue, the Morrises argue that the evidence is legally and factually insufficient to support the district court's fact findings and that the district court erred in its legal conclusions regarding jurisdiction.

*Applicable law*

The Texas long-arm statute authorizes Texas courts to exercise personal jurisdiction over a nonresident defendant that "does business" in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (West 1997 & Supp. 2004-05). Committing a tort in Texas constitutes "doing business." *See id*. § 17.042(2) (West 1997). The broad language of the "doing business" requirement in section 17.042 permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Thus, we rely on precedent from the United States Supreme Court and other federal courts, as well as Texas decisions, to determine whether an assertion of personal jurisdiction is consistent with the requirements of due process. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Personal jurisdiction over a nonresident defendant satisfies due process when two conditions are met: (1) the defendant has established "minimum contacts" with the forum state, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Id*. at 793 (citing *International Shoe*, 326 U.S. at 316). A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the forum state has sufficient contacts to confer personal jurisdiction. *Id*. (citing *Burger King Corp. v. Rudzewicz*,

5

471 U.S. 462, 474-76 (1985)).  A defendant should not be subject to jurisdiction based on random, fortuitous, or attenuated contacts.  *Id*. (citing *Burger King*, 471 U.S. at 475).

The minimum-contacts analysis has been refined to distinguish two types of jurisdiction—specific and general jurisdiction.  Specific jurisdiction exists when the nonresident defendant's activities have been "purposefully directed" to the forum and the litigation results from injuries arising out of or relating to those activities.  *Guardian Royal*, 815 S.W.2d at 228.  The minimum-contacts analysis for specific jurisdiction is somewhat narrow, focusing on the relationship among the defendant, the forum, and the litigation.  *Id*.; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).  "It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis."  *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *Guardian Royal*, 815 S.W.2d at 230 n.11).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute.  *BMC Software*, 83 S.W.3d at 793.  A defendant challenging the court's assertion of personal jurisdiction must negate all jurisdictional bases alleged by the plaintiff.  *American Type*, 83 S.W.3d at 807.  Whether a court has personal jurisdiction over a defendant is a question of law, which we review *de novo*.  *BMC Software*, 83 S.W.3d at 794.  However, the trial court frequently must resolve questions of fact before deciding the question of jurisdiction.  *Id*.  When the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds.  *Id*.; *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

Under our legal sufficiency standard of review, we ascertain whether there is more than a scintilla of evidence to support the finding; if so, the challenge fails. *BMC Software*, 83 S.W.3d at 795; *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions." *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 548 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A factual sufficiency challenge requires proof that a finding was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied). In conducting this review, we consider the entire record, not just the evidence in support of the challenged fact. *Walker Ins. Servs.*, 108 S.W.3d at 548. We will affirm if we can uphold the trial court's order on any legal theory finding support in the evidence. *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 645 (Tex. App.—Fort Worth 2003, pet. denied).

### *Specific jurisdiction*

The Morrises assert that the following six findings of fact are not supported by legally and factually sufficient evidence:

5. [Dr. Morris] has been licensed to practice veterinarian [sic] medicine in the State of Texas since August 10, 2000;

* * *

7. In 2001, Robert G. Morris and Joyce M. Morris performed embryo transplant programs in the State of Texas for Kallie Jo Kohls-York, individually and dba Kallie-Harie Reds on April 24 and 25 and September 23 and 24, 2001, in Schleicher County, Texas;

8. In 2001, [the Morrises] performed embryo transplant programs in the State of Texas for Brenda Behring, individually and dba South Central Texas Boer Goats on April 21 and October 9 and 10, 2001, in Gonzales Country, Texas;

* * *

13. Plaintiffs' claims against all defendants arise from or are directly related to actions by the defendants that were performed within the State of Texas by defendants.

The Morrisses also challenge four of the district court's five conclusions of law:

2. The nonresident defendants have purposefully performed acts and consummated transaction in the State of Texas;

3. Plaintiffs' causes of action are the direct result of the purposefully performed acts by the defendants that in whole or substantial part occurred within the State of Texas;

4. The assumption of jurisdiction by this state does not offend traditional notions of fair play and substantial justice; and

5. Plaintiffs have met their burden of proof and established all necessary elements for the court . . . to exercise jurisdiction over all defendants as to the causes of action arising out of defendants' acts.

Additionally, two of the district court's fact findings are, in substance, conclusions of law, and we will treat them as such.[2]

9. Robert G. Morris and Joyce M. Morris have had continuous and systematic contacts with the State of Texas since 1995;

---

[2] *See Ray v. Farmers' State Bank,* 576 S.W.2d 607, 608 n.1 (Tex. 1979); *Des Champ v. Featherston,* 886 S.W.2d 536, 541 n.4 (Tex. App.—Austin 1994, no writ). We may not analyze conclusions of law through factual sufficiency analysis. *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.*, 981 S.W.2d 483, 485 (Tex. App.—Austin, 1998, no pet.). Thus, we will review these conclusions of the district court *de novo*.

8

10. Morris Genetics, L.L.C., Robert G. Morris, and Joyce M. Morris have purposefully availed themselves of the privilege of conducting activities within the State of Texas.

Behring and Kohls-York alleged the following facts in support of the trial court's assertion of personal jurisdiction over the Morrises: (1) the Morrises performed embryo work and transplant programs on Behring's ranch in 1998-2001 and on Kohls-York's goat farm in 2001; (2) while performing these services, both Robert and Joyce Morris were personally present in Texas and did not have anyone else assisting them; (3) the Morrises had represented they had the necessary skills, licenses, and experience to achieve a successful embryo transplant program; (4) the Morrises' daily summary sheets for 2001 estimated to both Behring and Kohls-York a success rate of 70%; (5) the Morrises represented that Dr. Morris was a skilled and licensed veterinarian and that Joyce Morris was a skilled and licensed embryologist; and (6) despite the represented success rates, Behring alleges a success rate of 13% in the spring and 33% in the fall of 2001, and Kohls-York alleges a success rate of 39% in the spring and 5% in the fall of 2001.

The Morrises assert that these allegations and evidence fail to differentiate between the performance of their corporate duties for Morris Genetics, L.L.C., and their actions in their individual capacities. When, as here, there are multiple defendants, we must test each defendant's actions and contacts with the forum separately. *Shapolsky v. Brewton*, 56 S.W.3d 120, 132 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). At this stage of the proceeding, we are not charged with determining the merit of plaintiffs' allegations against the Morrises. *See Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 489 (Tex. App.—San Antonio 2003, no pet.). Instead, we

9

examine plaintiffs' allegations and then determine separately whether the evidence establishes a substantial connection between each of the Morrises and Texas. *Id.*

While purporting to challenge several of the district court's fact findings, the Morrises actually do not dispute that, in some capacity, they committed the conduct the trial court found. Finding of fact 5 states that Robert Morris has been licensed to practice veterinary medicine in Texas since August 2000. Dr. Morris concedes as much in his brief on appeal. Findings of fact 7 and 8 refer to services both Robert and Joyce Morris indisputably provided for Behring and Kohls-York in 2000 and 2001 while physically present at their respective Texas properties. According to Joyce Morris's testimony, she assisted her husband as an embryologist in the transplant surgeries at issue while physically present in Texas; she "collected the embryos, evaluated them, handled them, and replaced them back in." Finally, finding of fact 13 states that the plaintiffs' causes of action arise or are directly related to actions performed by the Morrises while in Texas. The Morrises do not dispute that their performance of embryo transfer services for Behring and Kohls-York while physically present in Texas gave rise to Behring and Kohls-York's claims against them. Rather, the Morrises assert that each of these findings can properly relate solely to their acts in the capacity of Morris Genetics employees, not as individuals.

Assuming without deciding that the Morrises were acting solely in their capacities as Morris Genetics employees, the findings and evidence supports the assertion of specific personal jurisdiction over both Robert and Joyce Morris individually. Texas employs a three-part test to determine whether there is specific jurisdiction: (1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of

10

action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Schlobohm,* 784 S.W.2d at 358 (citing *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex. 1966)). These requirements ensure that a nonresident will be "haled" into court only as a result of intentional activities, so that it is reasonable for the nonresident defendant to anticipate being called into a Texas court. *See Guardian Royal,* 815 S.W.3d at 226; *Schlobohm*, 784 S.W.2d at 357-58.

Applying this three-part test, we find that the district court properly exercised specific jurisdiction over the Morrises. In relation to the first prong, both Robert and Joyce Morris performed the embryonic transfers while physically present in Texas since 1997, and they continued to be present in Texas to perform them after the formation of Morris Genetics. The embryo transfer and implantation services entailed surgical procedures that Robert Morris, as a licensed veterinarian, was solely qualified to provide. Joyce Morris, as an embryologist, assisted in those procedures. They purposefully conducted those acts in Texas. In relation to the second prong, the tortious acts by both the Morrises arose out of those acts or transactions. Kohls-York and Behring alleged that the Morrises each committed tortious acts when conducting the embryonic transfers and implantations on the goat herds.

Concerning the third prong, both the Morrises were conducting a substantial amount of business in Texas, Robert Morris himself was licensed to practice veterinary medicine in the State

11

of Texas, and it does not appear unfair to assert jurisdiction over the Morrises. The allegation that the Morrises each committed torts while in Texas leads us to conclude that the exercise of specific jurisdiction over the Morrises does not offend "traditional notions of fair play and substantial justice." *See BMC Software*, 83 S.W.3d at 796-97 (tort alleged to have occurred in Texas; however, evidence showed tort occurred outside of Texas and, thus, court erred in asserting specific jurisdiction); *Guardian Royal*, 815 S.W.2d at 231 ("Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state."); *Holk v. USA Managed Care Org., Inc.*, 149 S.W.3d 769, 774 (Tex. App.—Austin 2004, no pet.). Corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation. *Shapolsky*, 56 S.W.3d at 133. Due-process considerations are satisfied if defendants direct tortious conduct toward the forum state with the foreseeable knowledge that the actions will cause harm to a resident of the forum and the defendants purposefully avail themselves of the privilege of conducting activities within the forum state. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Burger King*, 471 U.S. at 474-76; *Calder*, *v. Jones*, 465 U.S. 783, 798-90 (1984). It is foreseeable that the use of a contaminated microscope to perform embryo transfers on goats in Texas will cause harm to the Texas residents who own the goats. In addition, by coming to Texas to perform the embryo transfers the Morrises purposefully availed themselves of the privilege of conducting activities within Texas. Finally, Morris Genetics has not challenged the district court's exercise of personal jurisdiction, and the Morrises, as the only employees and officers of Morris Genetics, must be in Texas as a part of the litigation against Morris

12

Genetics.  Thus, we find that the assertion of jurisdiction will not offend traditional notions of fair play and substantial justice.

Having considered each of the three *Schlobohm* prongs, we determine that it is proper for the district court to assert jurisdiction over both of the Morrises in this case.

We note that our sister court in San Antonio has recently considered similar issues in a similar case involving the Morrises.  *See Morris v. Powell*, 150 S.W.3d 212 (Tex. App.—San Antonio 2004, no pet.).  In that case, the court found that the district court had specific jurisdiction over Robert Morris but not over Joyce Morris.  *See id*. at 222-23.  In doing so, the court stated that the fact that Joyce Morris, "a Morris Genetics, L.L.C. corporate officer, is alleged to have committed a tort in Texas is not dispositive because that, alone, does not give Texas courts jurisdiction over her as a nonresident."  *Id*. at 223 (citing *Shapolsky*, 56 S.W.3d at 133, and *Stern*, 123 S.W.3d at 489).  For that proposition, both *Shapolsky* and *Stern*, in turn, relied on a case from this court, *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.).

Our *Hoppenfeld* holding does not change our analysis in this case.  *Hoppenfeld* concerned a fraudulent misrepresentation made in the course of negotiating a franchise agreement.  *Id*. at 54, 57.  The plaintiff entered an agreement to become the franchise director in Travis and Bexar Counties for a national corporation that provided computerized legal research for attorneys.  *Id*. at 54.  The plaintiff filed suit against an executive from New York in his individual capacity based solely on statements made at a seminar in New York and on a letter sent by that executive to the plaintiff in response to the plaintiff's complaints concerning service quality.  *Id*. at 58.  These statements concerned research techniques employed by the corporation.  *Id*.  No tort was alleged to

13

have resulted from the actual services of the corporation, only from statements about its methods of research. *Id*. at 54.

The executive was never physically in Texas, and none of the acts or transactions that formed the basis of the suit in arose in Texas. *Id*. at 57-58. Nothing in the record supported the proposition that the executive invoked the protections and benefits of Texas laws. *Id*. at 58. Thus, *Hoppenfeld* stands for the proposition only that the fact that a tort is alleged to have been committed by a person out-of-state and that the tort may have had an effect in Texas is not sufficient for a court to exercise personal jurisdiction. In this case, as we have discussed above, both Morrises were physically present in Texas, performed the embryo transplants in Texas, and allegedly committed the torts while physically in Texas. Adhering to the well-established methods for analyzing a court's exercise of specific jurisdiction, we find that the trial court properly exercised specific jurisdiction over the Morrises in their individual capacities.

Because we have found the evidence legally and factually sufficient to support the trial court's findings of fact and because we have found that the trial court appropriately exercised specific jurisdiction, we have no need to decide if the district court could exercise general jurisdiction in this case. *See BMC Software*, 83 S.W.3d at 793 (defendant challenging court's assertion of personal jurisdiction must negate all jurisdictional bases). We overrule the Morrises' first issue.

### *Fiduciary shield doctrine*

In their second and third issues, the Morrises assert the fiduciary shield doctrine should have been applied to bar the trial court's exercise of personal jurisdiction. Although the

14

Texas Supreme Court has not explicitly adopted the fiduciary shield doctrine, many of our sister courts have recognized it. The fiduciary shield doctrine protects a corporate officer or employee from the trial court's exercise of general jurisdiction when all of the individual's contacts with Texas were on behalf of the employer. *Morris*, 150 S.W.3d at 221; *Wright*, 137 S.W.3d at 250 n.8; *see also Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) ("Absent some allegation of a specific act in Texas, or one with reasonably foreseeable consequences within this state's borders, a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here."); *Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 738 (Tex. App.—Fort Worth 2001, no pet.) (noting general rule that court may not assert personal jurisdiction over individual based on individual's relation to corporation unless corporation is individual's alter ego). Texas courts that have applied the fiduciary shield doctrine, however, have explicitly limited its application to the exercise of *general jurisdiction* over a nonresident defendant.[3] *See Wright*, 137 S.W.3d at 250; *Jackson v. Kincaid*, 122 S.W.3d 440, 448 (Tex. App.—Corpus Christi 2003, pet. granted); *SITQ*, 111 S.W.3d at 651; *Brown v. Gen. Brick Sales Co.*, 39 S.W.3d 291, 300 (Tex. App.—Fort Worth 2001, no pet.); *Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 803 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (fiduciary shield doctrine protected Australian resident from trial court's exercise of general jurisdiction when only contacts with Texas were on employer's business); *but see D.H. Blair Inv. Banking Corp. v. Reardon*, 97

---

[3] In *Tuscano v. Osterburg*, the El Paso court analyzed the fiduciary shield doctrine only with respect to general jurisdiction. 82 S.W.3d 457, 467 (Tex. App.—El Paso 2002, no pet.). Because the trial court found that it lacked specific jurisdiction in the case, the court of appeals did not discuss specific jurisdiction on appeal. *Id*. at 462.

15

S.W.3d 269, 277 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.).[4] The fiduciary shield doctrine does not protect a corporate employee from the exercise of specific jurisdiction as to fraudulent activities or torts for which the employee may be held individually liable. *Stern*, 123 S.W.3d at 488. Although an individual's contacts with a forum should not be analyzed based on his or her employer's activities in that forum, one's status as an employee does not insulate the employee from the trial court's jurisdiction. *Calder*, 465 U.S. at 790. "There is no blanket protection from jurisdiction simply because a defendant's alleged acts were done in a corporate capacity." *SITQ*, 111 S.W.3d at 651. Instead, each defendant's contacts with the forum state must be assessed on an individual basis. *Calder*, 465 U.S. at 790.[5]

Because we have found that the trial court properly exercised specific jurisdiction over both Robert Morris and Joyce Morris, the fiduciary shield doctrine, if recognized by this Court, would not protect them in this case. This doctrine protects employees and officers from liability for tortious acts committed by others who work for the corporation. It does not, however, protect employees from liability for their own tortious conduct committed while acting as an employee. The

---

[4] The *Reardon* court analyzed the fiduciary shield doctrine in the context of specific jurisdiction. *See D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 277 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.). However, it ultimately did not find that the fiduciary shield doctrine applied under the facts of that case. *Id*. at 278. Other than this one case, the courts of appeals are consistent in their holdings that the fiduciary shield doctrine applies only with regard to general jurisdiction.

[5] Today, in *Ennis v. Loiseau*, No. 03-04-00748-CV, slip op. (Tex. App.—Austin May 5, 2005, no pet. h.), this Court reaches the same conclusion—that the fiduciary shield doctrine, if recognized, applies only to the exercise of general jurisdiction, not specific jurisdiction.

16

Morrises, as the only employees of Morris Genetics, performed those services in Texas. We overrule the Morrises' second and third issues.[6]

### *Personal jurisdiction generally*

In their fifth issue, the Morrises claim that there is no legal theory on which the trial court could assert personal jurisdiction. However, we have found that the evidence was legally and factually sufficient to support the trial court's findings of fact to assert jurisdiction and find the trial court's conclusions of law correct insofar as they confer specific jurisdiction over the Morrises. We overrule the Morrises' fifth issue.

### CONCLUSION

We have found that the trial court correctly exercised specific jurisdiction over the Morrises and that the fiduciary-shield doctrine does not shield them from liability for their own tortious conduct. We affirm the district court's denial of both of the Morrises' special appearances.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: May 5, 2005

---

[6] As a result, we have no need to consider the Morrises' fourth issue—whether the evidence is legally or factually sufficient to establish the alter-ego exception to the fiduciary shield doctrine.