**Opinion issued November 14, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00921-CV

———————————

**DEVON ENERGY CORPORATION AND DEVON ENERGY PRODUCTION COMPANY, L.P., Appellants**

**V.**

**BRIAN CORMIER, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-18832**

---

## MEMORANDUM OPINION

Appellee, Brian Cormier, a Louisiana resident, sued appellants, Devon Energy Corporation (DEC) and Devon Energy Production Company, L.P., (DEPCO) (collectively, the Devon Entities), for personal injuries he sustained while working on a drilling rig in New Mexico. In this interlocutory appeal, the

Devon Entities challenge the trial court's order denying their special appearances. In two issues, the Devon Entities contend that the trial court could not properly exercise either specific or general personal jurisdiction over them. Because we agree with the Devon Entities that Cormier's pleading failed to establish the existence of personal jurisdiction over them, we reverse the trial court's order and render judgment dismissing Cormier's claims against the Devon Entities for lack of personal jurisdiction.

## Background

Cormier, a Louisiana resident, worked on a land-based oil rig located in New Mexico on property owned and operated by the Devon Entities. Cormier was employed by Nabors Drilling Technologies USA, Inc., a Texas corporation with headquarters in Harris County, Texas.[1] Cormier alleged that he was thrown from the rig and suffered severe injuries to his back and other parts of his body.

On March 23, 2020, Cormier filed suit against Nabors Drilling and the Devon Entities, alleging causes of action for negligence, negligence per se, and gross negligence. He alleged that the defendants' failure to properly manage the drilling operations on the job site in New Mexico resulted in serious injuries, and he sought damages including medical expenses, physical pain and mental anguish, lost earnings and loss of future earning capacity as well as punitive damages.

---

[1] Nabors Drilling was named as a defendant in Cormier's lawsuit, but it was nonsuited and thus is not a party to the special appearance or to this appeal.

Regarding jurisdiction, Cormier alleged that the trial court had jurisdiction over the defendants "because they are Texas residents, conduct a substantial amount of business in Texas, and/or the cause of action accrued in Texas." With respect to DEC specifically, Cormier alleged that it "does a substantial amount of business in Harris County, Texas" and "even has a building in downtown Houston named after it." He alleged that DEPCO also "does a substantial amount of business in Harris County, Texas."

The Devon Entities specially appeared on April 27, 2020, asserting that Cormier had not and could not plead sufficient jurisdictional facts to establish that they had minimum contacts with Texas to confer either general or specific personal jurisdiction on the trial court. DEC is a Delaware company with headquarters in Oklahoma. DEPCO, a subsidiary of DEC, is an Oklahoma company with headquarters in Oklahoma. They asserted that, because they were neither incorporated in nor headquartered in Texas, nor did they maintain sufficient contacts with the state to render them "essentially at home," the trial court could not assert general jurisdiction over them. They further asserted that the accident occurred in New Mexico, and none of the operative facts of the litigation connected them with the State of Texas, and, thus, Cormier could not establish the existence of specific jurisdiction.

The Devon Entities then filed a verified denial and original answer subject to their special appearance, also on April 27, 2020.

Cormier responded to the Devon Entities' special appearances, asserting additional facts in support of his contention that the trial court could properly exercise personal jurisdiction. He stated that the Devon Entities (1) own "over one hundred thousand acres of land in Texas" and profit from those acres; (2) operate "countless drilling rigs in Texas" and produce at least 47,000 barrels of oil a day from that drilling; (3) advertise "that 15% of [their] production originated from Texas in 2019"; (4) engage in "litigating other cases in Harris County without contesting jurisdiction." Cormier further referenced the Devon Energy website, pointing out that it "has an entire webpage dedicated to its Texas Operations." The webpage referred to the Devon Entities interest in the Eagle Ford shale in DeWitt County, Texas.

Cormier's response also referenced facts established during its deposition of the Devon Entities' corporate representative, Kevin Harwi. Harwi was employed by DEPCO as a land manager and testified as the corporate representative of both Devon Entities. Harwi stated that DEPCO has "limited Texas operations," testifying that "we do not have any drilling operations in the State of Texas, and we have a—an interest in a number of wells in two counties in the Eagle Ford in South Texas." Harwi identified DeWitt and Karnes counties as the location of

those interests, which he described as "a joint working interest [with] BPX, which is British Petroleum's operating arm in the United States." Harwi testified that BPX operated all of the drilling and completion operations in the Eagle Ford, and Devon has "a 50 percent ownership with BPX [in] about a hundred thousand net acres." Devon's interest in the Eagle Ford shale dated back to December 2013 and Harwi expected that Devon would continue to hold that interest for the foreseeable future. Harwi stated that 47,000 barrels of oil per day—the net production from the Eagle Ford interest—could represent 15 percent of the company's production, although he did not know the company's total production. He testified that the Eagle Ford interest "is one small piece of our business . . . in context to the rest of the organization." Harwi testified that the number of Devon employees working in Texas varies from time to time.

After several continuances, the trial court held a hearing on the Devon Entities special appearance on April 7, 2021. On the record at the hearing, the trial court denied the Devon Entities' special appearance, but it did not sign an order denying the special appearance.

This Court subsequently issued its opinion in *Devon Energy Corporation v. Moreno*, reversing the denial of a special appearance on substantially similar allegations against the same Devon Entities and rendering judgment dismissing the plaintiff's claims for lack of personal jurisdiction. No. 01-21-00084-CV, 2022 WL

5

547641 (Tex. App.—Houston [1st Dist.] Feb. 24, 2022, no pet.) (mem. op.). In light of this opinion, on June 30, 2022, the Devon Entities filed a motion for reconsideration of their special appearances. In the motion to reconsider, the Devon Entities pointed out that the trial court heard and orally denied the special appearance on April 7, 2021, but "did not enter the accompanying Order" and that, as of the date of the motion, "an Order has not been entered."

The Devon Entities' motion prompted further briefing between the parties. The trial court ultimately signed an order on December 5, 2022, stating that it "has considered Defendants Devon Energy Corporation's and Devon Energy Production Company, L.P.'s Special Appearance" and ordered that the Devon Entities' "Special Appearance is DENIED." This appeal followed, with the Devon Entities filing their notice of appeal on December 13, 2022. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

## Appellate Jurisdiction

As a preliminary matter, Cormier argues that the Devon Entities' appeal was untimely, stating that it is "both jurisdictionally barred and procedurally defective."

Cormier asserts that the Devon Entities failed to file their notice of appeal within 20 days of the trial court's denial of their special appearance. Cormier, however, bases this argument on the trial court's oral ruling denying the Devon Entities' special appearance, which occurred on April 7, 2021. The trial court

6

signed its written order denying the special appearance on December 5, 2022, nearly 20 months after its oral ruling.

Texas Rule of Appellate Procedure 26.1 provides that the time for filing an appeal runs from the date the order is signed. *See* TEX. R. APP. P. 26.1(b) ("[I]n an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order *is signed*[.]" (emphasis added)). Texas courts have uniformly held that appellate deadlines run from the time the order or judgment is signed, not from the time it is announced or rendered. *See, e.g.*, *Baker v. Bizzle*, 687 S.W.3d 285, 291 (Tex. 2024) ("Reducing a decision to final judgment has three phases: (1) rendition; (2) signing; and (3) entry. Rendition and signing are judicial acts that can, but need not, occur at the same time."); *Id.* at 301 & n. 3 (Justice Young, concurring) (noting that rules of procedure "trigger a host of vital deadlines or consequences based not on when judges *render* a judgment but when they *sign* it" and citing Rule of Appellate Procedure 26.1); *Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex. 1995) (providing that "appellate timetable runs from the signing date of whatever order that makes a judgment final and appealable"); *Palma v. Sterling Assoc. Servs., Inc.*, No. 01-23-00805-CV, 2024 WL 3973440, at *3 (Tex. App.—Houston [1st Dist.] Aug. 29, 2024, no pet.) (applying Rule 26.1 and calculating time for filing notice of appeal from date judgment was signed); *Empire Equipment Int'l v. Pipeline Machinery Int'l, L.P.*, No. 02-09-001234-CV,

7

2011 WL 754340, at *3 (Tex. App.—Fort Worth Mar. 3, 2011, pet. denied) (mem. op.) (rejecting challenge to appellate jurisdiction that was "based entirely on the incorrect premise that appellate timetables run from the date that judgment is rendered rather than the date that the judgment is signed," and holding, "For purposes of appellate timetables, such as the appellate timetable involved here for filing a notice of appeal, the critical date is the date on which the judgment or appealable order is signed").

Cormier also contends that the December 5 order was not a ruling on the special appearance but was a denial of the Devon Entities' motion to reconsider. This contention is not supported by the record. The motion to reconsider stated that the trial court heard and orally denied the special appearance on April 7, 2021, but "did not enter the accompanying Order" and that, as of the date of the motion to reconsider, "an Order has not been entered." The trial court signed the underlying order on December 5, 2022, stating that it "has considered [Devon Entities'] *Special Appearance*" and determined that it should be denied. Thus, the trial court's December 5 order was the signed order denying the special appearance.

Because the Devon Entities filed their notice of appeal within 20 days after the trial court signed the order denying their special appearance, their appeal was timely. *See* TEX. R. APP. P. 26.1(b).

8

Cormier argues, alternatively, that the Devon Entities waived their special appearance, asserting, "Assume once more—again, incorrectly—that the trial court's April 2021 [oral] denial of the Devon Defendants' special appearance was not an actual ruling. In that case, the Devon Defendants made general appearances by requesting new trial dates and filing a motion for continuance of trial, thus waiving their jurisdictional objection." Thus, Cormier argues that the Devon Entities waived their special appearances by making general appearances and then requesting a trial date and moving for a continuance.[2]

We first observe that Texas courts make a distinction between rendition of a judgment or oral pronouncement of a ruling and the signing of the accompanying judgment or order. *See Baker*, 687 S.W.3d at 291; *Empire Equipment Int'l*, 2011 WL 754340, at *3. As set out above, we hold that the appellate deadlines run from the trial court's signing of the order denying the special appearance. This holding does not mean, however, that the trial court's oral ruling was not a determination of the special appearance for purposes of Rule of Civil Procedure 120a.

---

[2] The Devon Entities contend that they did not request a trial date, and it was instead Cormier who requested a new trial date at the conclusion of the hearing on the special appearance. The hearing record demonstrates that, after the trial court announced its denial of the special appearance, the attorney for the Devon Entities informed the court that the case was "set for trial on April 5th," a date that had already passed. Cormier's attorney then pointed out that "we need to get a new date." Thus, it does not appear that the Devon Entities "requested a trial date." And in any event, any mention of a new trial setting was made after the trial court determined the special appearance. *See* TEX. R. CIV. P. 120a(2).

Under Rule 120a, a properly entered special appearance enables a nonresident defendant to challenge personal jurisdiction in a Texas court. TEX. R. CIV. P. 120a. Rule 120a(1) mandates that a special appearance be filed "prior to [a] motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance[.]" *Id.*; *Exito Electronics Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004) (referring to Rule 120a(1) as "the due-order-of-pleading requirement"). Rule 120a also incorporates a "due-order-of-hearing" requirement, which provides that a special appearance motion "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." TEX. R. CIV. P. 120a(2).

Here, the Devon Entities filed their answer after and subject to their special appearance. The trial court held the hearing on the special appearance and made its oral determination prior to hearing any other plea or pleading. Nothing in the record indicates activity by the Devon Entities that violated the due order requirements of Rule 120a. *See id.* Cormier points to the Devon Entities' actions of, for example, moving for a continuance of the trial date. Not only did the Devon Entities seek resolution of its special appearance before seeking any further relief from the trial court, but none of the activities referenced by Cormier constituted a

request for affirmative relief inconsistent with the Devon Entities' assertion that the trial court lacked personal jurisdiction. *See Exito Electronics*, 142 S.W.3d at 305–306 (considering whether party requested affirmative relief inconsistent with jurisdictional challenge in determining special appearance was not waived, citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 323 (Tex. 1998)).

We conclude that the Devon Entities' interlocutory appeal of the trial court's special-appearance ruling is properly before this Court.

## Special Appearance

The Devon Entities argue that the trial court erred in denying their special appearances. They argue that the trial court cannot exercise general jurisdiction over them because they were not formed in or headquartered in Texas. They further argue that there is no connection between the operative facts of the litigation—which involves alleged injuries sustained on a jobsite in New Mexico— and Texas, and, therefore, the trial court could not exercise specific jurisdiction over them.

### A.    Standard of Review

We review de novo a trial court's determination of a special appearance. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *Moreno*, 2022 WL 547641, at *4; *see also PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 132 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("Whether a trial

11

court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo."). "When, as here, the trial court does not issue findings of fact or conclusions of law, all fact findings necessary to support the judgment and supported by the evidence are implied." *Moreno*, 2022 WL 547641, at *4 (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). A trial court determines a "special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). On appeal, the scope of review includes all of the evidence in the record. *PetroSaudi Oil Servs.*, 617 S.W.3d at 132.

"[T]he plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 301 S.W.3d at 658; *see LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). Initially, the plaintiff bears the burden "to plead sufficient allegations to bring the nonresident defendant within the reach of [Texas's] long-arm statute." *LG Chem*, 670 S.W.3d at 346. The defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff on either a factual or legal basis. *Id.* The defendant "can present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction, and the plaintiff can then respond with its own evidence supporting its allegations," or "the defendant can show that even if the plaintiff's

12

alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction." *Id.*

**B.      Exercise of Personal Jurisdiction.**

"Texas courts may assert personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute so provides and (2) the exercise of jurisdiction 'is consistent with federal and state due process guarantees.'" *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)). Texas's long-arm statute reaches as far as federal constitutional requirements of due process permit. *Id.* It "permits courts to exercise jurisdiction over a defendant who 'does business in this state.'" *LG Chem*, 670 S.W.3d at 346 (quoting TEX. CIV. PRAC. & REM. CODE § 17.042).

Federal due process standards require that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *PetroSaudi Oil Servs.*, 617 S.W.3d at 133 (quoting *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018)). "A defendant establishes minimum contacts with a forum state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

13

In considering a defendant's contacts with this State, "only the defendant's contacts with the forum are relevant." *Bell*, 549 S.W.3d at 559 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)). "The contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Id.* And "the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction." *Id.* "We assess the quality and nature of the contacts, not the quantity." *PetroSaudi Oil Servs.*, 617 S.W.3d at 134.

A defendant's contacts with the forum may give rise to either general or specific jurisdiction. *Bell*, 549 S.W.3d at 559; *PetroSaudi Oil Servs.*, 617 S.W.3d at 134. Specific jurisdiction exists when the defendant's purposeful contacts are "substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Bell*, 549 S.W.3d at 559–60. In analyzing for specific jurisdiction, the focus is on "the relationship between the forum, the defendant, and the litigation." *Id.* at 559.

"[A] court has general jurisdiction over a defendant only if its 'affiliations with the [s]tate are so continuous and systematic as to render it essentially at home in the forum [s]tate.'" *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (alterations in original). "Courts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of

14

business there, absent some relatively substantial contacts with the forum state."

*Id.*

## C.     Specific Jurisdiction

In their first issue, the Devon Entities assert that the trial court could not properly exercise specific jurisdiction over Cormier's claims against them. Cormier concedes that only general jurisdiction is at issue here. He did not argue, in the trial court or on appeal, that the Devon Entities' contacts with Texas are "substantially connected to the operative facts of the litigation or form the basis of the cause of action." *See Bell*, 549 S.W.3d at 559–60. The events giving rise to Cormier's claims against the Devon Entities occurred in New Mexico, and Cormier does not allege any facts creating a nexus between the forum, the defendant, and the litigation. *See id.* at 559; *see also Moreno*, 2022 WL 547641, at *8 (holding, where "Moreno, a Texas resident, brought negligence claims in a Texas court, complaining of injuries sustained while working outside the Texas forum and based on allegations of acts or omissions occurring outside the Texas forum," that Texas trial court lacks specific jurisdiction over Devon Entities, stating, "Even if the Devon Entities have minimum contacts with Texas, the complained-of liability and injuries do not arise from or relate to those contacts.").

Accordingly, the trial court could not exercise personal jurisdiction over either of the Devon Entities based on specific jurisdiction. We sustain the Devon Entities' first issue.

**D.    General Jurisdiction**

The Devon Entities further argue in their second issue that the trial court could not have found general jurisdiction over them. We agree with the Devon Entities.

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For a corporation the 'paradigm' forums for the exercise of general jurisdiction are the place of incorporation and its principal place of business." *PetroSaudi Oil Servs.*, 617 S.W.3d at 134 (citing *Daimler AG*, 571 U.S. at 137). However, "[t]he exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

Operations substantial enough to render a nonresident corporation "at home" requires more than contacts that are, in some sense, continuous and systematic

16

contacts. *See Daimler AG*, 571 U.S. at 137–39; *Searcy*, 496 S.W.3d at 72 ("Continuous and systematic contacts that fail to rise to this relatively high level are insufficient to confer general jurisdiction over a nonresident defendant."). The general jurisdiction inquiry "does not focus solely on the magnitude of the defendant's in-state contacts." *BNSF Ry. Co.*, 581 U.S. at 414. "Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* (quoting *Daimler AG*, 571 U.S. at 140 n. 20).

It is undisputed that neither DEC nor DEPCO is incorporated in Texas, nor does either Devon Entity have its principal place of business in Texas. *See Searcy*, 496 S.W.3d at 72 ("Courts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state."); *see also Moreno*, 2022 WL 547641, at *8 (observing that plaintiff "did not present any evidence in rebuttal to establish that DEC or DEPCO is either incorporated in Texas or has its principal place of business in Texas," and so "the jurisdictional evidence establishes that Texas is not one of the paradigmatic forums in which the Devon Entities may be fairly regarded as being 'at home'").

Cormier argued in the trial court and on appeal that the Devon Entities' "continuous and systematic" activities in Texas support a finding of general

jurisdiction, arguing that the Devon Entities' business activities in Texas "are so continuous and systematic as to render [them] essentially at home in Texas." Cormier presented evidence of the nature of the Devon Entities' business activities in Texas. The Devon Entities own "over one hundred thousand acres of land in Texas" as part of a joint venture with BPX in the Eagle Ford shale, and they profit from those acres. The Devon Entities' involvement with the Eagle Ford shale in DeWitt and Karnes Counties also involves, to some extent, the operation of "countless drilling rigs in Texas" that produce at least 47,000 barrels of oil a day. The Devon Entities advertised "that 15% of [their] production originated from Texas in 2019." Cormier further asserted that the Devon Entities have employees in Texas and an office building in downtown Houston. Finally, Cormier asserted that the Devon Entities were engaged in "litigating other cases in Harris County without contesting jurisdiction."

We first observe that Cormier does not distinguish between the ownership interests, production, employees, or other activities of DEC and DECPO and instead refers to the activities of "Devon Energy" or the Devon Entities generally. However, "[w]hen a case involves multiple defendants, as here, the plaintiff must specify, and the court must examine, 'each defendant's actions and contacts with the forum separately.'" *Moreno*, 2022 WL 547641, at *4, 13 (holding that "the defendants' contacts cannot be aggregated"); *see also Calder v. Jones*, 465 U.S.

783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) ("[I]t is only the defendant's contacts with the forum that count[.]"); *Loya v. Taylor*, No. 01-14-01014-CV, 2016 WL 6962312, at *3 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. denied) (mem. op.) (holding that when case involves multiple defendants, their contacts cannot be aggregated and plaintiff must specify, and court must examine, each defendant's actions and contacts with forum); *Morris v. Kohls-York*, 164 S.W.3d 686, 693 (Tex. App.—Austin 2005, pet. dism'd) (same).

Even if we were to conclude that Cormier's jurisdictional evidence applies equally to both Devon Entities, none of these contacts—even though they can be considered in some sense continuous and systematic—rise to the relatively high level of rendering either Devon Entity essentially "at home" in Texas. *See Daimler AG*, 571 U.S. at 137–39; *Searcy*, 496 S.W.3d at 72. Cormier's own jurisdictional evidence suggests that the Devon Entities' interests in Texas account for only 15% of the companies' overall production. Harwi testified in his deposition that DEPCO has "limited Texas operations," and he stated that the Eagle Ford interest "is one small piece of our business . . . in context to the rest of the organization."[3] *See*

---

[3]    In his appellee's brief, Cormier cites some evidence from DEC's Form 10-K annual report. However, it does not appear that this report was presented to the trial court, and it is not included in the appellate record. We cannot consider

*Moreno*, 2022 WL 547641, at \*9–10 (considering Devon Entities' interest in approximately 100,000 acres in Eagle Ford as "joint working interest owner" with BPX and determining that those contacts do not render either Devon Entity essentially at home in Texas).

We considered substantially similar jurisdictional allegations in *Moreno* and found them to be insufficient to establish general jurisdiction:

> With respect to Moreno's argument that the trial court has jurisdiction because the Devon Entities realize production from their Texas mineral interest, the jurisdictional evidence presented shows that, *in 2019*, the Devon Entities, collectively, obtained 15 percent of their oil production and 7 percent of their oil reserves from their working interest in the Eagle Ford. This evidence is insufficient to confer general jurisdiction over the Devon Entities. The evidence reflects only one year of production. More importantly, the evidence also shows the converse, namely, that 85 percent of the Devon Entities' oil production and 93 percent of their reserves that year were outside of the State of Texas.

*Id.* at \*11.

We concluded that the presence of an unspecified number of Devon employees in Texas is insufficient to confer general jurisdiction over the Devon

summary judgment or jurisdictional evidence that was not before the trial court. *See Univ. of Tex. v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961). Likewise, an appellate court may not consider materials outside the appellate record. *See Mitchell v. Citifinancial Mortg. Co.*, 192 S.W.3d 882, 883 (Tex. App.—Dallas 2006, no pet.); *see also PetroSaudi Oil Servs., Ltd. v. Hartley*, 617 S.W.3d 116, 132 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (holding that scope of appellate review includes all evidence *in record*). Furthermore, nothing in the report indicates that either of the Devon Entities was incorporated or headquartered in Texas, nor does it convey "exceptional" facts that would support a contention that DEC is essentially at home in Texas. It therefore would not change our analysis in this case.

20

Entities. *Id.* We must consider the "type and nature of the office maintained" in determining whether the ongoing presence of employees or existence of an office would render a corporation essentially home. *Id.* (citing *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 217 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *see also BNSF Ry. Co.*, 581 U.S. at 414 (holding that general-jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them") (quoting *Daimler AG*, 571 U.S. at 140 n. 20). Cormier presented no evidence that the number or type of Devon employees located in Texas would render either Devon Entity "at home" in Texas. Harwi testified in his deposition that the Devon Entities employed people in Texas, but he did not know the number of employees located in Texas, and he stated that the number varies. He further testified that BPX, and not Devon, was responsible for all of the drilling and completion operations in the Eagle Ford.

Thus, none of the jurisdictional evidence involving Devon employees or property indicates that the employees or offices located in Texas rise to the level of making the Devon Entities at home in Texas. *See Daimler AG*, 571 U.S. at 133 & n.11 (noting that defendant's contacts must be exceptional and "comparable to a domestic enterprise in that State"); *McDaniel v. BP Amoco Expl. (In Amenas) Ltd.*, No. 01-17-00475-CV, 2018 WL 614392, at *2 (Tex. App.—Houston [1st

Dist.]Jan. 30, 2018, no pet.) (mem. op.) ("[G]eneral jurisdiction over a corporate defendant may be had in exceptional cases in which the defendant's in-state operations are so substantial that they render it at home there."); *see, e.g.*, *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447–48 (1952) (wartime relocation of corporation's headquarters to state made it at home there).

In *Moreno*, we likewise rejected the contention that the Devon Entities are subject to jurisdiction in this state because they have defended against other litigation in Texas. 2022 WL 547641, at *12. In evaluating a nonresident defendant's contacts with this state, we consider "only the defendant's contacts with the forum . . . not the unilateral activity of another party or a third person." *See Bell*, 549 S.W.3d at 559. The fact that the Devon Entities have defended against unrelated litigation in Texas is not sufficient to show that either corporation purposefully availed itself of this forum. *See id.* And, as we observed in *Moreno*, "any other such litigation against the Devon Entities in Texas could be subject to jurisdictional factors not present here, such as the existence of specific jurisdiction or forum selection clauses." 2022 WL 547641, at *12.

Cormier argues that we should not follow *Moreno*—which involved, as here, allegations that the plaintiff was injured on a rig in New Mexico and negligence claims against the same Devon Entities. Instead, he argues that *PetroSaudi Oil Services* controls the resolution of this appeal. We conclude that *PetroSaudi* is

distinguishable on the facts. In that case, this Court held that the defendant was essentially at home in Texas. *PetroSaudi Oil Servs.*, 617 S.W.3d at 140–41. PetroSaudi was incorporated in the Cayman Islands and listed its principal place of business in London, where it had one employee. *Id.* at 140. This Court observed, however, that the company's "management team" was located in Houston and that the activities at the Houston office were extensive and essential to the corporation's business, which "was focused on finding opportunities for and operating the vessel, a drillship." *Id.* at 140–41. We concluded:

> It is clear from the evidence that the work performed in the Houston office was integral to the operation of the vessel, the success of which was the focus of PetroSaudi's business. The Houston office was not merely incidental to PetroSaudi's work but was instead akin to a "general business office" located in Texas.

*Id.* at 141. We held that the nature of PetroSaudi's contacts with Texas "were such that it was essentially 'at home' in Texas." *Id.*

Here, however, the nature of the contacts between the Devon Entities and Texas are materially different. The evidence presented by Cormier indicates that the Devon Entities' business activities in this state essentially revolve around its interest in approximately 100,000 acres in Eagle Ford. While this single asset is significant, there is no evidence that it was the "focus" of the Devon Entities' business. Cormier's own evidence indicated that Texas-related production accounted for only 15% of the Devon Entities' production. Cormier presented no

jurisdictional evidence of a Texas-based office or group of employees that could be considered a "general business office" for either Devon Entity.

As we stated in *Moreno*, "General jurisdiction must be supported by a showing that the nonresident defendant's Texas contacts are exceptional and so continuous and systematic as to render them essentially at home in Texas." 2022 WL 547641, at *13 (internal quotations omitted) (quoting *Daimler AG*, 571 U.S. at 133 n.11 (noting that defendant's contacts must be exceptional and "comparable to a domestic enterprise in that State")). "In assessing the quality of the contacts, we do not view each contact in isolation; rather, we carefully analyze all contacts to determine if together they are sufficient to support general jurisdiction." *Id.* (citing *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 809 (Tex. 2002); *Reid*, 130 S.W.3d at 216).

Here, as in *Moreno*, the Devon Entities presented jurisdictional evidence negating that their contacts with Texas render them essentially "at home" in Texas. *See id.* Cormier failed to bring forward jurisdictional evidence of contacts that are exceptional such that they render the Devon Entities "comparable to a domestic enterprise in [Texas]." *See Daimler AG*, 571 U.S. at 123–24, 137–139 (concluding that neither Daimler nor its subsidiary is incorporated in California, nor does either entity have a principal place of business there, and court could not exercise general personal jurisdiction over either party, despite extensive contacts in the state,

24

including multiple California-based facilities and a regional office; corporation was "the largest supplier of luxury vehicles to the California market"; and California sales accounted for 10% of the company's US sales); *see also BNSF Ry. Co.*, 581 U.S. at 414 (holding that Montana could not exercise general jurisdiction over BNSF, despite fact railway had over 2,000 miles of railroad track and employed more than 2,000 workers in Montana).

Accordingly, we conclude that the trial court could not exercise general jurisdiction over the Devon Entities. We sustain the Devon Entities second issue.

### Conclusion

We reverse the ruling of the trial court denying the Devon Entities' special appearances. We render judgment dismissing Cormier's claims against them for lack of personal jurisdiction.


Richard Hightower
Justice

Panel consists of Justices Goodman, Landau, and Hightower.